# UNITED STATES *v.* KLUMPP.[1]

CERTIORARI TO THE COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 159. Argued January 20, 1898. — Decided February 21, 1898.

In paragraph 297 of the tariff act of August 27, 1894, c. 349, 28 Stat. 509, providing that " the reduction of the rates of duty herein provided for manufactures of wool shall take effect January first, eighteen hundred and ninety-five," the words " manufactures of wool " had relation to the raw material out of which the articles were made, and, as the material of worsted dress goods was wool, such goods fell within the paragraph.

---

[1] The docket title of this case is " The United States, Appellant, *v.* Alexander Murphy & Co."

On the thirtieth day of August, A.D. 1894, John F. Klumpp and others, doing business as a partnership under the name of Alexander Murphy & Co., imported into New York certain merchandise consisting of women's and children's dress goods composed of worsted. The collector classified this merchandise and assessed it for duty under paragraph 395 of the tariff act of October 1, 1890, c. 1244, 26 Stat. 567, at twelve cents per square yard and fifty per cent *ad valorem*. The importers protested, claiming the goods to be dutiable under paragraph 283 of the tariff act of August 27, 1894, c. 349, 28 Stat. 509, at forty per cent, or fifty per cent *ad valorem*, according to the value per pound.

The Board of General Appraisers overruled the protest (G. A. 2769), and the importers carried the matter to the Circuit Court, which reversed the decision of the Board of General Appraisers. *Murphy* v. *United States*, 68 Fed. Rep. 908. On an appeal to the Circuit Court of Appeals for the Second Circuit, the decision of the Circuit Court was affirmed. *Murphy* v. *United States*, 38 U. S. App. 467. The case was then brought here on certiorari.

It was admitted below "that the classification of the merchandise by the collector was worsted dress goods, at twelve cents per square yard and fifty per cent ad valorem under schedule K, paragraph 395 of the tariff act of October 1, 1890."

And "that the merchandise in controversy is worsted dress goods, made from the fleece of the sheep, which has been combed and spun into worsted yarn, and is not composed of the hair of the camel, goat, alpaca or other animal than sheep."

Paragraph 395 of Schedule K of the act of October 1, 1890, entitled "Wool and Manufactures of Wool," read: "On women's and children's dress goods, coat linings, Italian cloth, bunting, and goods of similar description or character composed wholly or in part of wool, worsted, the hair of the camel, goat, alpaca or other animals, and not specially provided for in this act, the duty shall be twelve cents per square yard, and in addition thereto fifty per centum ad valorem: *Provided*, That on all such goods weighing over four ounces per square yard the duty per pound shall be four times the duty imposed

by this act on a pound of unwashed wool of the first class, and in addition thereto fifty per centum ad valorem."

Paragraph 283 of Schedule K of the act of August 27, 1894, c. 349, entitled "Wool and Manufactures of Wool," provided: "On women's and children's dress goods, coat linings, Italian cloth, bunting or goods of similar description or character, and on all manufactures, composed wholly or in part of wool, worsted, the hair of the camel, goat, alpaca or other animals, including such as have india rubber as a component material, and not specially provided for in this act, valued at not over fifty cents per pound, forty per centum ad valorem; valued at more than fifty cents per pound, fifty per centum ad valorem."

Paragraphs 280 to 286, inclusive, under this schedule, provided for duties on articles made, or composed, "wholly or in part of wool, worsted or the hair of the camel, goat, alpaca or other animals," except that paragraph 282, which referred to blankets, etc., omitted the word "worsted."

Paragraphs 287 to 296, inclusive, related to carpets, mats, etc., and the concluding paragraph of the schedule read: "297. The reduction of the rates of duty herein provided for manufactures of wool shall take effect January first, eighteen hundred and ninety-five."

Paragraph 685, one of the paragraphs of the free list, was as follows: "685. All wool of the sheep, hair of the camel, goat, alpaca and other like animals, and all wool and hair on the skin, noils, yarn waste, card waste, bur waste, slubbing waste, roving waste, ring waste and all waste, or rags composed wholly or in part of wool, all the foregoing not otherwise herein provided for."

*Mr. Solicitor General* for appellant.

*Mr. W. Wickham Smith* for appellees. *Mr. Charles Curie* was on his brief.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Women's and children's dress goods, "composed wholly or

in part of wool, worsted, the hair of the camel, goat, alpaca or other animals," were dutiable under paragraph 395 of the act of October 1, 1890, at twelve cents per square yard and fifty per cent *ad valorem;* under paragraph 283 of the act of August 27, 1894, at forty or fifty per cent *ad valorem;* according to value. But by paragraph 297, the reduction of the rates of duty on "manufactures of wool" was not to take effect until January 1, 1895. And if that paragraph applied to worsted dress goods for women and children, then the collector was right, and the judgment must be reversed.

Was it intended that the words "manufactures of wool," as used in this paragraph, should include or exclude worsted goods?

Worsted goods are made out of wool, and are necessarily a manufacture of wool. The Century Dictionary defines "worsted" as a noun: "A variety of woollen yarn or thread, spun from long-staple wool which has been combed, and in the spinning is twisted harder than is usual;" and as an adjective: "Consisting of worsted; made of worsted yarn; as worsted stockings."

"Worsted is but wool, spun and twisted in a particular manner," said Mr. Justice Story, in *Whiting* v. *Bancroft*, 1 Story, 560. And in *Cahn* v. *Seeberger*, 30 Fed. Rep. 425, it was found by Judge Blodgett that: "Worsted is made by combing long fibred wools so that the fibres usually lie or are arranged alongside each other, while wool is treated by carding it so as to interlock the fibres with each other."

As between worsted yarns and woollen yarns the Encyclopædia Britannica says that the fundamental distinction "rests in the crossing and interlacing of the fibres in preparing woollen yarn, — an operation confined to this alone among all textiles, while for worsted yarn the fibres are treated, as in the case of all other textile materials, by processes designed to bring them into a smooth, parallel relationship with each other." Vol. 24, p. 658.

Although through the introduction of improved processes of manufacture, it gradually became possible to comb shorter and finer varieties of wool, and thus to manufacture worsted

goods of higher grade and better quality, approximating worsted to woollen goods, and removing the reason for any distinction between them in the matter of duties, the tariff laws prior to May 9, 1890, made a distinction in that respect between woollen and worsted goods, resting on the difference in the process of manufacture; but the raw material was, of course, always the same, namely, wool.

By the tariff acts of April 27, 1816, c. 107, 3 Stat. 310·; of May 22, 1824, c. 136, 4 Stat. 25; May 19, 1828, c. 55, 4 Stat. 270; July 14, 1832, c. 227, 4 Stat. 583; August 30, 1842, . c. 270, 5 Stat. 548, worsted stuff goods were recognized as manufactures of wool.

By the acts of July 30, 1846, c. 74, 9 Stat. 42; March 2, 1861, 12 Stat. 252, Res. 15; July 14, 1862, c. 163, 12 Stat. 543; June 30, 1864, c. 171, 13 Stat. 202; March 2, 1867, c. 197, 14 Stat. 559; March 3, 1883, c. 121, 22 Stat. 488, "manufactures of wool not otherwise provided for," were separated from "manufactures of worsteds not otherwise provided for," and distinct duties levied on each, while from 1861 distinct duties were levied on articles specifically described, whether manufactured of wool or worsted.

In *Seeberger* v. *Cahn*, 137 U. S. 95, 97, it was held that cloths popularly known as diagonals, and in trade as worsteds, were subject to duty under the act of March 3, 1883, as manufactures of worsted and not as manufactures of wool, the ground . of decision being thus stated by Mr. Justice Gray delivering the opinion of the court:

"In the interpretation of the customs acts, nothing is better settled than that words are to receive their commercial meaning; and that when goods of a particular kind, which would otherwise be comprehended in a class, are subjected to a distinct rate of duty from that imposed upon the class generally, they are taken out of that class for the purpose of the assessment of duties.

"Of the two successive paragraphs in the customs act of 1883, upon which the parties respectively rely, the first imposes a certain scale of duties on 'all manufactures of wool of every description, made wholly or in part of wool, not spe-

cially enumerated or provided for in this act;' and the second imposes a lower scale of duties on 'all manufactures of every description, composed wholly or in part of worsted.' . . .

"Though worsted is doubtless a product of wool, and might in some aspects be considered a manufacture of wool, yet manufactures of worsted being subjected by the second paragraph to different duties from those imposed by the first paragraph on manufactures of wool, it necessarily follows that a manufacture of worsted cannot be considered as a manufacture of wool, within the meaning of this statute."

This decision was announced November 17, 1890, but the controversy had been pending for a long time in the courts, and on May 9, 1890, an act was passed, "providing for the classification of worsted cloths as woollens," by enacting: "That the Secretary of the Treasury be, and he hereby is, authorized and directed to classify as woollen cloths all imports of worsted cloth, whether known under the name of worsted cloth or under the name of worsteds or diagonals or otherwise." 26 Stat. 105, c. 200.

And since that date no distinction for customs purposes between woollens and worsteds has been recognized by Congress.

By the act of October 1, 1890, the same duties were levied upon worsted and woollen goods. Paragraphs 375 to 387 divided all wools, hair of the camel, goat, alpaca and other like animals into three classes, and levied certain duties on each class. Paragraphs 391 to 398 provided for certain duties on described articles, whether made wholly or in part of "wool, worsted, the hair of the camel, goat, alpaca or other animals."

By the act of August 27, 1894, wool was put on the free list (par. 685), and the paragraphs of the act of October 1, 1890, classifying wools and levying duties on the different classes, were omitted. Paragraphs 280 to 286, inclusive, of Schedule K of this act prescribed duties on certain enumerated articles, whether composed wholly or in part of wool, worsted, the hair of the camel, goat, alpaca or other animal.

There was no distinction made by either of these acts be-

tween manufactures of wool and manufactures of worsted for the purposes of duty, and the word "worsted" seems to have been used out of abundant caution and as conducive to greater certainty.

The act of July 24, 1897, commonly known as the Dingley act, omits the repetition of the words "wool, worsted, hair of the camel, goat, alpaca and other animals," and uses the single word "wool." Paragraph 383 provides: "Whenever, in any schedule of this act, the word 'wool' is used in connection with a manufactured article of which it is a component material, it shall be held to include wool or hair of the sheep, camel, goat, alpaca or other animal, whether manufactured by the woollen, worsted, felt or any other process." 30 Stat. 151, c. 11.

Manifestly the distinction on which the decision in *Seeberger* v. *Cahn* turned was done away with by the acts of October 1, 1890, and August 27, 1894, as well as by that of May 9, 1890, and there certainly is no imperative ground for its reinstatement by technical construction.

The reason for the postponing of the taking effect of the reduction of duties obviously had nothing to do with the process of manufacture, but related to the material of which the goods were composed, which material had been relieved from duty by paragraph 685 of the act.

Congress undoubtedly concluded that the manufacturers of goods from wool had laid in a large stock of material, which equitably they should be allowed a reasonable time to work off, and that there was probably on hand a large stock of goods, to dispose of which reasonable time should be allowed, rather than that the large dealers should be induced to bring in foreign goods at a cost which involved ruinous competition; while at the same time the wool growers ought to have their original market until they could adjust themselves to the new condition of things.

The specific rate was compensatory, and, when stricken out, and the duty on raw material abolished, a postponement was provided for in order to avoid injustice.

But the reason for postponing the reduction on manufact-

ures of wool, which, on the face of the act, we think properly imputable to Congress, is as applicable to worsted goods as to any other goods fabricated from wool.

It will be perceived that the acts of 1890 and 1894 did not levy a duty on "worsted dress goods," *eo nomine*, nor on worsted dress goods by commercial designation, nor on worsted dress goods as distinguished from woollen dress goods; but a duty on dress goods, whether made of "wool, worsted, the hair of the camel, goat, alpaca or other animals." The description is addressed to the quality and material of the goods, namely, women's and children's dress goods, made of wool, worsted, etc.

The principle then that the special designation of an article by its commercial meaning should prevail over general terms used in the same or a later act, has no application.

In *Barber* v. *Schell*, 107 U. S. 617, the words "cotton laces, cotton insertings," etc., used in the act of 1846, were held to be designations of articles by special description of quality and material, and the general provision of 1857, transferring to Schedule C "all manufactures composed wholly of cotton, which are bleached, printed or dyed," whereby a different duty was imposed on such goods, was held to apply. Mr. Justice Blatchford said: "The designations qualified by the word 'cotton' in the act of 1846 are designations of articles by special description, as contra-distinguished from descriptions by a commercial name or a name of trade. They are designations of quality and material." *Cadwalader* v. *Zeh*, 151 U. S. 171, 178.

It is argued that the same reasoning which brings worsted goods within the words "manufactures of wool," would also compel the inclusion of goods composed of the hair of the camel and other animals, confessedly not covered by the phrase.

Doubtless wool considered as the sheep's coat might be said to be the sheep's hair, and fleeces of the hair of the Angora goat, the Llama, the Alpaca, and other like animals, might be called their wool. In the Encyclopædia Britannica, (9th ed. vol. 24, p. 653,) under the title of "Wool and Woollen Manu-

factures," it is said : " Wool is a modified form of hair, distinguished by its slender, soft and wavy or curly structure, and by the highly imbricated or serrated surface of its filaments. The numerous varieties of the sheep are the most characteristic, as they are also by far the most important, producers of wool ; but the sheep is by no means the only animal which yields wool employed for industrial purposes. The alpaca and other allied fibres obtained from the alpaca and its congeners in South America, the mohair yielded by the Angora goat and the soft, woolly hair of the camel are all wools of much industrial importance, while the most costly wool in the world is that yielded by the Cashmere goat of the Himalayan Mountains. At what point indeed it can be said that an animal fibre ceases to be hair and becomes wool it is impossible to determine, because in every characteristic the one class by imperceptible gradations merges into the other, so that a continuous chain can be formed from the finest and softest merino to the rigid bristles of the wild boar." G. A. 2834 ; *Lyon v. United States,* 8 U. S. App. 409, 413.

But the acts of 1890 and 1894, as well as prior tariff acts, distinguished the wool of the sheep from the hair of the camel, goat and other like animals, as raw materials. And there is nothing in this record from which to conclude that Congress felt obliged to make concessions by way of alleviating the effect of the act of 1894 on the production of the hair of the camel, the goat, the alpaca, and so on, in this country, or on manufactures thereof.

We think that the words "manufactures of wool," in paragraph 297, had relation to the raw material out of which the articles were made, and that as the material of worsted dress goods was wool, such goods fell within the paragraph.

*Judgment of the Circuit Court of Appeals reversed; judgment of the Circuit Court also reversed, and the cause remanded to that court with a direction to affirm the decision of the Board of General Appraisers.*