## TILGE *v.* UNITED STATES (No. 577).[1]

1. CONGRESSIONAL RECORD.

In the ascertainment of the intention of the Congress in giving final shape to a paragraph that had been a subject of contention with them, resort may be had to the current history of the times and of the particular piece of legislation in question. The Congressional Record officially preserves that history.—Aldridge *et al. v.* Williams (3 How., 8, 23).

2. SKIVERS NOT DUTIABLE AS SPLIT LEATHER.

Reviewing the legislative history of the proviso to paragraph 450, tariff act of 1909, it can not be held the Congress meant to extend its provisions to still other paragraphs—to paragraph 451, for example—and so "split leather," as employed in that proviso, does not include articles such as the skivers of the importation. These were properly held to be dutiable under paragraph 451; and as the duty would be the same it is unnecessary to determine their classification as between either "sheepskins dressed and finished" or as "other leather."

### United States Court of Customs Appeals, May 29, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7134 (T. D. 31131).

[Affirmed.]

*Curie, Smith & Maxwell* (*W. Wickham Smith* and *Thomas M. Lane* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Charles D. Lawrence* on the brief) for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal involves the dutiable classification of skivers. The name designates the grain side of a sheepskin split in the pickled state, and subsequently tanned, dressed, and finished. While this portion of the sheepskin is designated as a "skiver," which is generally used in the making of sweatbands for hats, pocketbooks, the linings of valises, and similar uses, the inner half, when similarly tanned, dressed, and finished, is designated as a "flesher," and is principally, if not exclusively, used in the making of chamois. A sheepskin not split, but tanned, dressed, and finished, is known as a "roan."

These skivers when imported at the port of Philadelphia were assessed for dutiable purposes under the provisions of paragraph 451 of the tariff act of 1909 as "sheep * * * skins * * * dressed

---

[1] Reported in T. D. 31662 (20 Treas. Dec., 1183).

and finished." Protestants, who are the appellants here, allege, and here claim, that they are properly dutiable as split leather within the meaning of the proviso to paragraph 450 of the said act. The Board of General Appraisers held that they were properly dutiable as "all other leather" under a different provision of paragraph 451 of the act.

In our view of the case it is unnecessary to here decide whether they are dutiable as "all other leather," as determined by the board, or as "sheepskins dressed and finished," as found by the collector, for the reason that the applicable rate of duty in either case is the same. The question for determination, then, is whether or not skivers are "split leather" within the terms of the proviso to paragraph 450.

The determination of this question is given light by the legislative history of its adoption. It was not, as enacted, incorporated within the tariff act of August 5, 1909, it being in terms of a concurrent resolution correcting certain provisions of the act, passed after the adoption of the conference report by both Houses of Congress.

The related provisions of the tariff act of August 5, 1909, as finally passed, unchanged and uninfluenced by this resolution in so far as affecting hides and leather, were as follows:

451. Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem; dressed upper *and all other leather*, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; [Then follows the provisions for various other skins, as patent and japanned leathers and other specified leather, such as glove and pianoforte leather] * * * boots and shoes made of leather, fifteen per centum ad valorem: *Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

461. Harness, saddles, saddlery, in sets or in parts, finished or unfinished, thirty-five per centum ad valorem.

676. (Free list.) Skins of all kinds, raw (except sheepskins with the wool on), and hides not specially provided for in this section.

The various phases of the provisions of paragraph 450, as adopted in reaching the form as finally approved by both Houses of Congress, unaffected by the concurrent resolution, were as follows:

Paragraph 581 of the free list as it passed the House read as follows:

581. Hides of cattle, raw or uncured, whether dry, salted, or pickled.

Paragraph 581 of the House bill was merged into paragraph 450 as it passed the Senate and read as follows:

450. Hides of cattle, raw or uncured, whether dry, salted, or pickled, fifteen per centum ad valorem: *Provided*, That upon all leather exported, made from imported hides, there shall be allowed a drawback equal to the amount of duty paid on such hides, to be paid under such regulations as the Secretary of the Treasury may prescribe.

The same paragraph, as reported from the conference committee and adopted by the House and Senate, read as follows:

450. Hides of cattle, raw or uncured, whether dry salted or pickled, shall be admitted free of duty: *Provided,* That on and after October first, nineteen hundred and nine, sole leather made from such hides shall pay a duty of five per centum ad valorem; that grain, buff, and split leather made from such hides shall pay a duty of seven and one-half per centum ad valorem; that boots and shoes, the upper leather of which is made wholly or in chief value from such hides, shall pay a duty of ten per centum ad valorem; that harness, saddles, and saddlery, in sets or in parts, finished or unfinished, composed wholly or in chief value of leather made from such hides, shall pay a duty of twenty per centum ad valorem.

As modified by the concurrent resolution referred to and finally adopted, it read as follows:

450. Hides of cattle, raw or uncured, whether dry, salted, or pickled, shall be admitted free of duty: *Provided,* That on and after October first, nineteen hundred and nine, grain, buff, and split leather shall pay a duty of seven and one-half per centum ad valorem; that all boots and shoes, made wholly or in chief value of leather made from cattle hides and cattle skins of whatever weight, of cattle of the bovine species, including calfskins, shall pay a duty of ten per centum ad valorem; that harness, saddles and saddlery, in sets or in parts, finished or unfinished, composed wholly or in chief value of leather, shall pay a duty of twenty per centum ad valorem.

In the ascertainment of the purposes and intention of Congress in the final adoption of the paragraph reference must be had to the current history of the times and of this legislation. The Congressional Record, Sixty-first Congress, first session, pages 4875 to 4954, inclusive, is the official record of that history. That such may be adverted to in the ascertainment of the intent of Congress and in explanation of ambiguous provisions of the law then enacted is well settled by the authorities.

In United States *v.* Union Pacific Railroad Co. (91 U. S., 72) the Supreme Court stated in construing an act of Congress that the courts may recur to the history of the times when it was passed in order to ascertain the reasons for, as well as the meaning of, the particular provisions in it.

In Aldridge *et al. v.* Williams (3 How., 8, 23), it is stated:

The law as it passed is the will of the majority of both Houses, and the only mode in which that will is spoken is in the act itself; and we must gather their intention from the language there used, comparing it, when any ambiguity exists, with the laws upon the same subject, and looking, if necessary, to the public history of the times in which it was passed.

In United States *v.* Trans-Missouri Freight Association (166 U. S., 290, 318), the court said:

* * * The only proper way to construe a legislative act is from the language used in the act, and, upon occasion, by a resort to the history of the times when it was passed.

By adverting for this information to the separate enactments of the different Houses of Congress and the law itself it is shown that at and immediately prior to the passage of the concurrent resolution

which ultimately framed the language of paragraph 450, as before us for consideration, *all* hides of cattle were rated for duty at 15 per cent ad valorem; *all* boots and shoes made of leather at 15 per cent ad valorem; *all* harness, saddles, and saddlery at 35 per cent ad valorem; *all* band, bend, or belting leather, rough leather, and sole leather at 5 per cent ad valorem; dressed upper and "*all* other leather" at 15 per cent ad valorem; certain other specific leathers were rated at not less than 15 per cent ad valorem; and calfskins were free of duty.

The history of the times and the legislative history of this provision recorded as above stated, as well as the internal construction of paragraph 450, in its progress from the House to ultimate law, discloses that this provision was the subject of determined contention by different members of the legislative bodies. Upon the one hand certain Members of the Congress demanded that hides of cattle should be placed upon the free list. Upon the other hand the opponents of that contention demanded that hides of cattle should be made dutiable, as was already provided in the paragraphs above quoted, as the proposed and approved enactment prior to the passage of the concurrent resolution.

A compromise was effected, whereby it was agreed that the legislation adopted should express that hides of cattle, as defined in the resolution, should be free of duty, and that in consideration thereof the manufactured product of these hides should bear a less rate of duty than that previously adopted. It was a compromise agreement, intended to effect, and to effect only, that in consideration of free hides the products of which those free hides constituted the raw material should suffer a reduction in the rates of duty previously provided.

As paragraph 450 came from conference and was adopted by both Houses the proviso relating to the products of the free cattle hides, provided for in the purview of the paragraph, used the words "made from such hides," referring to such imported free cattle hides in each of its separate provisions. It was immediately contended that this language did not effect the terms of the compromise, and the concurrent resolution was adopted to meet these objections and to effect the compromise as agreed.

The concurrent resolution omitted these reference words. The reason for that, and that it was not to eliminate express application of the proviso to the purview or to extend the other provisions of the proviso to other paragraphs of the act, is plainly shown by the modifications made in the language under consideration.

Had the words "made from such" been left in the different parts of the proviso as paragraph 450 was adopted, the proviso would have referred solely to manufactures and products of *imported* hides, or, in

other words, hides which "shall be admitted free of duty." This would apparently have nullified the provision and manifested the impossibility, inasmuch as the purview of the paragraph referred solely to imported goods, of referring the proviso expressly thereto. Confining the proviso, however, to the *subject matter* of the purview by legal intendment, under the well-settled rules of construction, effected perfectly the intention of the Congress without militating against the literal or legal effectiveness of the paragraph itself.

Bearing in mind the purpose of the Congress, as thus indicated, we proceed to the inquiry whether or not upon the language adopted it effectively legislated its intention perforce of the language adopted.

The well-settled rule that a proviso must be related only to the purview of the paragraph to which it is added, unless *the language of the proviso indicates* a contrary intent upon the part of Congress, is such a well-settled rule of statutory construction that it needs no citation. It is, however, so aptly stated in Lewis's Sutherland Statutory Construction, section 352, that we hazard its quotation:

352. The natural and appropriate office of the proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it unless it clearly appears to have been intended to apply to some other matter. It is to be construed in connection with the section of which it forms a part, and it is substantially an exception. If it be a proviso to a particular section, it does not apply to others unless plainly intended. * * * In other words, the proviso will be so restricted *in the absence of anything in its terms,* or the subject it deals with, evincing an intention to give it a broader effect. * * *

Not only is a proviso thus construed with reference to its application, but the proviso itself in the scope of its words will be so strictly construed as to include within its terms as limited a subject matter as those terms will permit.

The same authority in the same section in this connection states:

The proper function of a proviso being to limit the language of the legislature, it will not be deemed intended from doubtful words to enlarge or extend the act or the provision on which it is engrafted.

At the outset, therefore, we are confronted with this elementary rule of construction which requires that unless the language of the proviso itself indicates that it shall be extended beyond a strict construction of its own words, and beyond the purview of the paragraph itself, that construction must not be adopted.

In terms the proviso extends to three classes of merchandise: (1) Grain, buff, and split leather; (2) boots and shoes made wholly or in chief value of leather, made from cattle hides and cattle skins of whatever weight, of cattle of the bovine species; (3) harness, saddles, and saddlery composed wholly or in chief value of leather.

An examination of the paragraph of the law *in pari materia,* cited *supra,* shows that every subject matter included with the three provisions of this proviso had previously been made dutiable in express

terms. Grain, buff, and split leather were probably provided for in paragraph 451 as all other leather at 15 per cent ad valorem. Boots and shoes made of every kind of leather were provided for in paragraph 451 at 15 per cent ad valorem. Harness, saddles, and saddlery, whether made of leather or otherwise, were expressly provided for in paragraph 461 at 35 per cent ad valorem.

There was therefore absolutely no necessity to make further provision for duties upon these materials and articles unless it was intended by Congress to reduce the rates upon some only of those classes already provided for. If it had been the intention of Congress to reduce the rates only and not to limit the classes to which these reduced rates were applicable to some only of those already provided for, that purpose would probably have been effected and could better have been effected exactly as it was in other instances in this tariff act by *changing the rate only in the provision already written.* The fact that the Congress saw fit to adopt new language and to permit the other language covering the same subject matter to remain bears no slight evidence of the intention of Congress by the newly adopted language to differentiate the provisions already employed, which purpose is better subserved by relating the proviso to the purview of paragraph 450.

It is contended by appellants that the language employed by Congress in the second class included in the proviso expressly mentioning cattle hides and cattle skins of whatever weight of cattle of the bovine species, *including calfskins,* indicates an intention of Congress, perforce the maxim *expressio unius est exclusio alterius,* to confine only that part of the proviso to the purview of the paragraph, and, therefore, inferentially, to extend the other parts of the proviso beyond the purview of the paragraph.

There was a different reason warranting *and necessitating* the particular language as to this class of merchandise, the subject of the proviso, which did not obtain as to the other parts. In the presence of such and an express reason prompting the action of Congress, there is no latitude for the indulgence of an inference as to the intent of Congress. Indeed, the same evidence, which is the language used, that negatives any inference, expressly establishes the contrary. The language of the resolution, which is that of the provision before us for construction, was manifestly based upon the language of the enactment as adopted by both Houses upon the conference report. This part of the proviso there read—

that boots and shoes, the upper leather of which is made wholly or in chief value from such [cattle] hides.

The history referred to and the legislative language previously existing and as adopted indicates that it was the information of Congress that the provision as adopted was not only subject to

the objection previously indicated, but would include but few, if any, and probably no boots and shoes, as there were none such imported the upper leather of which was made wholly or in chief value of *cattle* hides. The further complaints were that the provision as drawn would cover only the ancient rawhide boot, a thing at the passage of the act comparatively unknown to the commerce of the country; that this provision would not cover boots and shoes made from hides of cattle the chief value of which did not reside in the upper leather; that the language "made wholly or in chief value from such hides" referred to "hides of cattle," and would not include, under the construction put upon these words by the long-existing practice of the customs, boots and shoes made in chief value of *calfskins*, although in every other particular and parts made of leather from cattle skins. The customs interpretation had affixed a definite line between cattle skins and calfskins, according to weight of the hides. In G. A. 4065 (T. D. 18837) and G. A. 4215 (T. D. 19716) it had been held, and that doctrine accepted for years, that cattle skins, green 25 pounds and under, dry 12 pounds and under, were free of duty as "skins not specially provided for" under paragraph 664 of the tariff act of 1897, which was identical with paragraph 676, *supra*, and were not included in the term "hides of cattle."

Hence the provision as adopted in the conference bill was limited in scope, as the objectors claimed.

To cover all of these objections, and not for the purpose of indicating by legal effect that the other provisions of the proviso were not limited to the purview of the paragraph, as indicated by the very words of this part of the proviso, the language employed was adopted. The legislative history of the times shows and fully corroborates this precise and detailed language to have been adopted and accepted under the terms of the compromise as expressing the intention and these purposes of the Congress, and not for the purpose of expressly relating this portion of the proviso to the purview of the paragraph.

Moreover, this part of the proviso, instead of supporting the inference suggested, evidences the exact contrary. What did Congress here do? Upon discovering that the proviso related by express words to *imported hides* of *cattle* only, and itself covered boots and shoes of *cattle* hides only, and that calfskins were made free by another provision of the law—paragraph 676, not referred to by this proviso—Congress set about first to correct the first limitation, which it did by striking out the words "made from such." Realizing that the proviso was still legally referred to the purview only of the paragraph, it then set about to include in this part of the proviso a subject matter not within the purview—boots and shoes of calfskins—but the subject of another paragraph, 451. In so doing it not only limited its language of extension to the classes of the subject matter of said

paragraph 451, but to one only of such, *eo nomine*, boots and shoes of calfskins. The words of Congress are those of carefully guarded, limited extension, "including calfskins." Here the rule of *expressio unius est exclusio alterius* encounters no contrary intent of Congress and *does* apply. Having expressly extended and limited this part of the proviso to one subject matter only of another paragraph of the law, the inference obtains that in all other particulars it is intentionally confined by Congress to the purview of paragraph 450.

That Congress deemed this proviso in its final framework as employed in the resolution as including by its language only matters expressly thereby excepted from the broader language *in pari materia* as previously written, and not as language coextensive in scope with that otherwhere written, is expressly indicated by the fact that in the resolution the repetition in paragraph 450, as adopted by the two Houses of "sole leather, at five per centum ad valorem," which then was and now is expressly provided for in paragraph 451 at the same rate, was avoided.

We think, therefore, that the internal framework of this proviso contains no language from which an intention may be inferred to extend its scope to other provisions of the law *in pari materia*. On the contrary, there is in addition to the foregoing other express language which has been construed by the Supreme Court of the United States as indicating a contrary purpose upon the part of Congress.

In United States *v.* Klumpp (169 U. S., 209, 215) a provision of the tariff act of 1894 was before the court for consideration. That act provides for free wool. Paragraph 297 thereof provided reduced rates on woolen manufactures. The tariff act of 1894 became operative in August, 1894, but provided that paragraph 297 should not go into effect until January 1, 1895. The proviso in paragraph 450 here is exactly similar in effect. The purview here went into effect August 6, 1909, when cattle hides became free. In the proviso it is expressly provided that *it* shall take effect on and after October 1, 1909. Of the provisions of the tariff act of 1894 of the same import the Supreme Court, through Mr. Chief Justice Fuller, in the case cited held the provisions related one to the other and comprehended the same materials:

The reason for the postponing of the taking effect of the reduction of duties obviously had nothing to do with the process of manufacture, but related to the material of which the goods were composed, which material had been relieved from duty by paragraph 685 of the act.

Congress undoubtedly concluded that the manufacturers of goods from wool had laid in a large stock of material, which equitably they should be allowed a reasonable time to work off, and that there was probably on hand a large stock of goods, to dispose of which reasonable time should be allowed, rather than that the large dealers should be induced to bring in foreign goods at a cost which involved ruinous competition; while at the same time the wool growers ought to have their original market until they could adjust themselves to the new condition of things.

From the language of suspension alone the court concluded the provisions related and the scope of the one limited to the subject matter of the other.

Obviously the date when the proviso is to go into effect here extends to that part of the provision relating to grain, buff, and split leather. In the presence, therefore, of the employment by Congress of language which has been expressly construed by the Supreme Court to indicate a fixed and certain purpose of Congress to refer the proviso to the purview of the paragraph, and in the absence of any language indicating a contrary intent, the rule of construction, if construction need be here invoked, that the proviso is to be strictly construed and refer only to the purview of the paragraph, obtains and leads to the conclusion that this proviso has no further application than to the purview of the paragraph of which it forms a part, and that when this language is strictly or liberally construed it does not extend to or include any of the merchandise included in the broader provisions of paragraphs 451 and 461, which are beyond the strict language of this proviso itself. This conclusion determines this case.

*Affirmed.*