WORSDELL & CO. *et al. v.* UNITED STATES (No. 548).[1]

1. SEAL SPLITS OR SEAL SPLIT LEATHERS.

Paragraph 450, tariff act of 1909, does not cover leathers made from the hides or skins of animals that are not cattle of the bovine species, and as *seal splits* or seal split leathers are made from animals not of the bovine species, they do not fall within the provisions of that paragraph.

2. GRAIN OR SPLIT LEATHER.

It not having been shown that the terms "grain leather" and "split leather," as used in paragraph 450 of the tariff act of 1909, are applicable in the trade only to leathers which are unfinished, finished leathers of these kinds made from the hides of cattle of the bovine species are dutiable under said paragraph.

## United States Court of Customs Appeals, October 16, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24566 (T. D. 31207).

[Affirmed in part, reversed in part.]

*Brown & Gerry* (*James L. Gerry* and *Allan R. Brown* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The collector of customs at the port of New York classified certain leathers imported into the country as leather not specially provided for and assessed it for duty at 15 per cent ad valorem under the provisions of paragraph 451 of the tariff act of August 5, 1909, the material parts of which are as follows:

451. Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem; dressed upper and *all other leather,* calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; * * * patent, japanned, varnished, or enameled leather weighing not over ten pounds per dozen hides or skins, twenty-seven cents per pound and fifteen per centum ad valorem; if weighing over ten pounds and not over twenty-five pounds per dozen, twenty-seven cents per pound and eight per centum ad valorem; if weighing over twenty-five pounds per dozen, twenty cents per pound and ten per centum ad valorem; pianoforte leather and pianoforte-action leather, and glove leather, twenty per centum ad valorem; leather shoe laces, finished or unfinished, fifty cents per gross pairs and ten per centum ad valorem; boots and shoes made of leather, fifteen per centum ad valorem. * * *

The importers protested that the merchandise was either band, bend, or belting leather, or rough or sole leather, dutiable at 5 per cent ad valorem under said paragraph 451 or that it was grain or split leather dutiable at $7\frac{1}{2}$ per cent ad valorem under the provisions of paragraph 450, which reads as follows:

450. Hides of cattle, raw or uncured, whether dry, salted, or pickled, shall be admitted free of duty: *Provided,* That on and after October first, nineteen hundred and nine, *grain,* buff, and *split leather* shall pay a duty of seven and one-half per centum

---

[1] Reported in T. D. 31977 (21 Treas. Dec., 467).

ad valorem; that all boots and shoes, made wholly or in chief value of leather made from cattle hides and cattle skins of whatever weight, of cattle of the bovine species, including calfskins, shall pay a duty of ten per centum ad valorem; that harness, saddles and saddlery, in sets or in parts, finished or unfinished, composed wholly or in chief value of leather, shall pay a duty of twenty per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed to this court.

In the determination of this case the following questions are involved: First. Were the terms "grain leather" and "split leather" trade terms on and immediately prior to August 5, 1909, the date of the passage of the tariff act; and if they were, did their general, uniform, and definite meaning in the trade cover the merchandise in question? Second. If those terms had no general, uniform, and definite meaning to the trade at the time the tariff act of 1909 was passed, does any of the merchandise come within the common and ordinary meaning of the expressions "grain leather" and "split leather"? Third. Are the provisions of paragraph 450 limited to leathers made from the hides or skins of cattle, that is to say, to leathers of bovine origin?

As to the commercial meaning of the terms "grain leather" and "split leather" the importers produced the testimony of Alfred J. Worsdell, Louis J. Robertson, Gaza Pasqusz, John Donovan, and Thomas R. Fleming, who testified in effect that at the time the tariff act of 1909 was passed, and prior thereto, "grain leather" and "split leather" were trade names generally and well understood by all people dealing at wholesale in leathers; that "split leather" was then and is now the name given by the wholesale trade to the flesh side and "grain leather" the name given to the hair side of a tanned hide after the splitting of such hide by dividing it horizontally so as to separate the hair side from the flesh side; that "grain leather" and "split leather" are general designations, identifying the top and bottom of the tanned hide after splitting, and embrace various special kinds of one class or other, the specific names of which are determined by the use to which the leather is to be finally dedicated and the state and color of the finish; that is to say, an unfinished grain leather or an unfinished split leather is known as a "rough grain" or "rough split," but if finished and intended for the manufacture of orange-colored suit cases the grain or split is designated either as an "orange grain case leather" or as "an orange split case leather," as the case may be. The five witnesses produced by the Government do not deny that the flesh side of a split tanned hide is known as "split leather" and the grain side as "grain leather." They insist, however, that these terms are applicable in the trade only to leathers which are unfinished. This claim on the part of the Government's witnesses loses much, if not all, of its weight, however, first, because they expressly admit that orders for finished grain or finished split leather,

specifying the kind of finish and color desired, are recognized and perfectly understood in the trade and convey to the wholesale dealer accurate information as to what is wanted; second, because they wholly fail to give any name to finished grains and finished splits which would adequately, specifically, or properly describe them; and, third, because their statement that finished grains and finished splits are known to the trade as "case leather" or "bag leather" or "belt leather" is stripped of all probative force when it is considered that the words "case," "bag," or "belt" define the manufacturing use of the leather and nothing more, and that "case," "bag," and "belt" leathers may be either "splits" or "grains." True, the testimony shows that orders for "case leather," without giving the qualifying words "grain" or "split," are not unknown, but the effect of that testimony is nullified by the statement that such orders are construed to mean "grains," and that if "splits" are desired the order must so specify expressly. The testimony of the Government's witnesses and the findings of the board seem to be based entirely on the fact that an order for "grain leather" or "split leather," unaccompanied by any specification of the color or finish desired or of the use to which the leather is to be put, would be commercially construed to mean that the undyed, *unfinished*, hair side or flesh side of a hide which had been tanned and split was required. That such an order would be so interpreted may be admitted. It can not be admitted, however, nor does it follow from that interpretation of that particular kind of an order, that the trade recognizes no grains or splits which are colored or finished. Much less is such a conclusion warranted when it is considered that the record clearly discloses that the words "split" and "grain" are used, accepted, and understood by the trade in ordering colored or finished split leathers and that their actual use in that connection is absolutely necessary in order to define with certainty what is required, except in cases where trade custom has made it safe to assume that a grain and not a split is desired. Quite naturally an order for "grain leather" or "split leather" which was couched precisely in those words and said nothing as to quality or finish would be construed to mean an unfinished grain or split. Such an interpretation of such an order falls short of proving, however, that finished splits and finished grains are unknown to the trade, and especially does it fall short in view of the fact that there is direct, affirmative, and positive evidence to the contrary from witnesses on both sides of the case.

We think the conflict of testimony in this case is more apparent than real, and that the statements of the several witnesses may be readily reconciled on the basis, first, that "grains" and "splits" define the two general classes of split leathers; second, that these general classes are subdivided into various subordinate classes

··· rding to color and finish, to which appropriate names are given indicating such color and finish; third, that the use of the names of such subordinate classes in ordering is forced by the necessity of expressing what color and what finish on the split or grain is wanted. If, however, we consider the case from the standpoint that the witnesses really differ as to whether there is any such thing known to the trade as a finished grain or finished split, we must still hold that there is a preponderance of evidence in favor of the contention of the importer. Disregarding the fact that Schwartzwaelder, a witness for the Government, defined a split to be the flesh side of a hide that is *finished* or *unfinished;* that other Government witnesses referred to finished and unfinished splits and grains; and that all of them admitted that orders for finished grains and splits of a certain color would be understood by the trade and unmistakably describe what was wanted, the circumstance that three of the five Government witnesses had comparatively little experience with the merchandise imported and did not deal to any great extent in finished grains and splits militates against the weight which might otherwise be accorded to their testimony. Naturally, witnesses whose trade was largely confined to the unfinished article would, in good faith, be disposed to believe and to testify that in the trade there were no "grain leathers" or "split leathers" which were finished, but their testimony in that behalf should not be permitted to counterbalance or outweigh the evidence of witnesses of wider experience. Moreover, even if the witnesses for the Government and for the importer be considered so much at variance that no commercial meaning can be attached to the terms "grain leather" and "split leather," and that the common, ordinary meaning of those expressions must therefore be accepted, we fail to see how that state of the case aids or assists the Government's contention. As popularly understood, "grain leather" would signify a leather which had a grain and "split leather" a leather which had been split, and with such as the meaning of the terms some of the leathers would clearly be included in the former and all of them within the latter designation.

We assume from the decision of the board and the briefs of counsel that the seal splits or seal split leathers mentioned in the record are not made from the hides of bovine animals. • As this court has already decided, in Tilge *v.* United States (2 Ct. Cust. Appls., 129; T. D. 31662), that paragraph 450 does not cover leathers made from the hides or skins of animals which are not cattle of the bovine species, we must therefore hold that the board was correct in excluding from the provisions of that paragraph the seal splits or seal split leathers in question.

The decision of the Board of General Appraisers as to grain leathers or split leathers made from the hides of animals other than those of the bovine species is *affirmed.* As to the other leathers it is *reversed.*