UNITED STATES *v.* TELFEYAN & CO. (No. 2706)[1]

COMMERCIAL DESIGNATION—MATS—RUGS—"ANATOLIAN MATS."

Commercial meaning must be accepted when it is different from the common meaning; and proof that floor coverings smaller than 4½ by 2½ feet are known commercially as mats in contradistinction from rugs excludes, *in this particular case,* such-sized "Anatolian mats," oriental, hand-made, and in chief value of wool, from the appropriate provision for such rugs, in paragraph 1116, Tariff Act of 1922, and effects their classification as mats, under paragraph 1117.

[1] T. D. 41648.

United States Court of Customs Appeals, May 8, 1926

APPEAL from Board of United States General Appraisers, G. A. 9044, T. D. 41143

[Affirmed.]

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* and *Henry J. Rode* of counsel) for appellees.

[Oral argument April 21, 1926, by Mr. Lawrence and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of Anatolian mats which the collector assessed with duty at the rate of 55 per centum ad valorem, as oriental rugs under the first clause of paragraph 1116 of the Tariff Act of 1922. The importers protested, claiming the merchandise to be mats and not rugs, and dutiable under the third provision of paragraph 1117, which protest was sustained by the Board of General Appraisers, and the Government has appealed from the board's judgment to this court.

Paragraphs 1116 and 1117 are as follows:

PAR. 1116. *Oriental*, Axminster, Savonnerie, Aubusson, and other carpets and *rugs, not made on a power-driven loom;* carpets and rugs of oriental weave or weaves, produced on a power-driven loom; chenille Axminster carpets and rugs, whether woven as separate carpets and rugs or in rolls of any width; all the foregoing, plain or figured, 55 per centum ad valorem. (Italics ours.)

PAR. 1117. Axminster carpets and rugs, not specially provided for; Wilton carpets and rugs; Brussels carpets and rugs; velvet and tapestry carpets and rugs; and carpets and rugs of like character or description, 40 per centum ad valorem.

Ingrain carpets, and ingrain rugs or art squares, of whatever material composed, and carpets and rugs of like character or description, not specially provided for, 25 per centum ad valorem.

All other floor coverings, including *mats* and druggets, not specially provided for, composed wholly or in chief value of wool, 30 per centum ad valorem.

Parts of any of the foregoing shall be dutiable at the rate provided for the complete article. (Italics ours.)

At the trial before the board two samples of the merchandise were introduced in evidence as representative of the two sizes of the importation. The smaller sample contains, in area, about 4 square feet and the larger about 5 square feet. The rugs were entered as one bale of oriental rugs and invoiced as Anatolian mats.

The following is copied from the decision of the Board of General Appraisers in this case:

It is not disputed, and the evidence shows, that they are handmade articles of oriental material in chief value of wool.

Two members of the importing firm, who have been in the business for upward of 20 years and who sell the merchandise in question throughout the country, testified. Their evidence establishes, under all the rules of commercial definition or trade custom, that the merchandise in question is universally sold as "Anatolia mats" and never as rugs in the wholesale trade of the United States, and, further, that commercially anything less than 4½ feet by 2½ feet is a mat, irrespective of the material of which it is composed, and there is nothing in the record to contradict this testimony.

The Government claims, on the other hand, that by all the definitions in the principal dictionaries "rug" is a generic term which includes a mat, the various qualities being graded under that term in paragraph 1116.

Giving this fact its full weight it only tends to establish that under the *common meaning* of the term a mat is included under the word "rug" and consequently if there was no proof of the commercial meaning these goods would be properly classified as mats, commonly known as a class of rugs under paragraph 1116 at the oriental rate.

But the difficulty is that, in establishing a commercial definition (as we hold it does) of the merchandise in question as mats less than 4½ feet by 2½ feet in size irrespective of material and as distinguished from rugs which are larger, the importer's evidence limits the term rugs in paragraph 1116 as not *commercially* including these mats.

As the commercial meaning when different from the common meaning must always govern in customs we are constrained to hold that the merchandise in question should be classified as mats at 30 per cent under the third clause of paragraph 1117. This ruling, of course, is limited to the particular articles before us as shown by this record.

It may be noted that in paragraph 1022, dealing with carpets, carpeting, mats, matting, and rugs, made wholly of cotton, flax, hemp, or jute, Congress thought it necessary to use both terms, and in paragraph 1020 they did the same thing, speaking of "mats or rugs made of linoleum," etc., which tends to support the conclusion that in dealing with woolen rugs and mats in paragraphs 1116 and 1117, the use of the express words "including mats and druggets" in the latter, indicates a purpose to make the 30 per cent rate apply to all mats when commercially distinct from rugs, no matter of what expensive handmade material composed, and no matter at what rate the larger articles of the same kind are taxed.

Judgment will therefore issue accordingly, sustaining the protest at 30 per cent ad valorem under the third clause of paragraph 1117.

We have examined the record carefully and agree with the board upon its construction of the evidence and its conclusions of law. While additional points were raised in the case, before this court, the well written opinion of the board contains about all that need be said on the issues in the case. Here, however, it is very ably and earnestly argued that, within the common understanding, the articles in question are rugs and that the commercial testimony, in the record, should not have been controlling with the board. As a basis for this argument, appellant's brief contains the following statement:

The trade understanding seems to be the same as the common understanding. Therefore the commercial testimony is not controlling and the merchandise must be held dutiable under the provision in which it is more specifically mentioned. As before stated, the oriental handmade mats or rugs in question are

specifically described both in character and the method of manufacture in paragraph 1116, and it is respectfully urged that that description is more specific and more comprehensively describes the merchandise than the catch-all provision for "all other floor coverings," etc., in paragraph 1117.

We agree with the board that the evidence shows positively that commercially, these were mats and not rugs, and that, commercially goods of this character less than 4½ feet by 2½ feet square, irrespective of material, are mats as distinguished from rugs, which are larger.

It makes no difference what the common meanings of the terms "rugs" and "mats" are, if they have commercial meanings different from the common ones. Tariff laws are addressed to the trade. That the commercial meaning must be accepted in the classification of merchandise when such meaning is different from the common meaning is so well settled in customs jurisprudence as to require no prolonged citation or discussion here. *United States* v. *Goldberg's Sons*, 3 Ct. Cust. Appls. 282; *United States* v. *Georgia Pulp & Paper Manufacturing Co.*, 3 Ct. Cust. Appls. 410; *Tower & Sons et al.* v. *United States*, 11 Ct. Cust. Appls. 157; *Hedden* v. *Richard*, 149 U. S. 346.

It will be noted that the board, in its decision, said:

> This ruling, of course, is limited to the particular articles before us as shown by this record.

Before this court plausible arguments for and against the proposition that Congress, in the enactment of the two paragraphs in controversy, intended that hand-woven oriental articles in chief value of wool, like the merchandise at hand, should be classified under paragraph 1116. No effort was made, however, to dispute the commercial testimony of the appellee. If this testimony is not true, it can be met by the Government in another case. If it is true and Congress desires a different classification, it, no doubt, will legislate accordingly.

Upon this record, as applying to the particular articles before us, we must affirm the decision of the Board of General Appraisers.

*Affirmed.*