UNITED STATES *v.* NIPPON IMPORT & TRADING CO., INC. (No. 4383)[1]

United States Court of Customs and Patent Appeals, November 2, 1942

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Samuel M. Richardson,* of counsel), for appellee.

[Oral argument October 7, 1942, by Mr. Weeks and Mr. Richardson]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, sustaining the protest of appellee against the action of the Collector of Customs at the port of New York, assessing certain merchandise, imported from Japan, with duty at the rate of 75 per centum ad valorem under paragraph 921 of the Tariff Act of 1930, as cotton rag rugs of the type commonly known as "hit-and-miss". Appellee claimed in its protest that the said merchandise was

[1] C. A. D. 220.

properly dutiable at the rate of 35 per centum ad valorem, under the provision of the same paragraph for "all other floor coverings."

The paragraph reads as follows:

PAR. 921. Rag rugs, wholly or in chief value of cotton, of the type commonly known as "hit-and-miss", 75 per centum ad valorem; chenille rugs, wholly or in chief value of cotton, 40 per centum ad valorem; all other floor coverings, including carpets, carpeting, mats, and rugs, wholly or in chief value of cotton, 35 per centum ad valorem.

The merchandise, invoiced as "Hit & Miss Cotton Rag Rugs," is in two sizes, 21 inches by 9 feet and 27 inches by 90 inches.

At the trial both parties presented testimony and an illustrative exhibit was received in evidence as representative of the involved merchandise. The exhibit is 9 feet long and 21 inches wide, the woof of which is composed of cotton rags of various colors thrown in at random. For the reason, seemingly, that the rags are thrown into the weaving without regard to design, the expression "hit-and-miss" is applied to floor coverings such as those here involved.

Before the trial court, the plaintiff (appellee here) contended that cotton rag "hit-and-miss" floor coverings having lengths of more than three times their widths are not rugs in a commercial sense but, under the doctrine of commercial designation, are known as "runners" and therefore properly dutiable as claimed.

Funk & Wagnalls New Standard Dictionary, 1938, defines a runner as "a long narrow rug, as for a hallway."

Witnesses for the plaintiff testified that commercially in the cotton rag hit-and-miss floor covering industry, the term "rug" excluded floor coverings the lengths of which are three or more times the widths, and that floor coverings of those relative dimensions are known to said trade definitely, uniformly and generally as "runners." Substantially all of the testimony in the record is to that effect. The evidence shows that type of floor covering to be used in hallways, on stairs, and sometimes over a carpet to save the latter from wear. It is not used as room rugs.

The trial court held that the plaintiff established commercial designation for rag rugs differing from the common meaning of "rag rugs" as used in the involved paragraph, by a clear preponderance of the evidence. In this connection the court cited and quoted from the case of *Neuman & Schwiers Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 127, T. D. 48606.

The Government contended below that the provision for rag rugs contained in paragraph 921 is not susceptible of proof of commercial designation, by reason of the language "of the type commonly known as 'hit-and-miss'" in said paragraph. To support that contention the case of *United States* v. *Stone & Downer Company et al.*, 274 U. S. 225, was cited.

The trial court distinguished the issues in the instant case from those in the *Stone & Downer* case and held that "the question of whether the merchandise at bar is a 'rug' or a 'runner' is susceptible of proof of commercial designation."

The case of *United States* v. *Telfeyan & Co.*, 14 Ct. Cust. Appls. 128, T. D. 41648, was mentioned by the court below as being analogous to the present case, stating that the facts there closely parallel those here.

For the reasons hereinabove set out, the trial court sustained the protest herein and the Government has appealed.

The issues presented in the appeal are the same as before the trial court, although appellant has not stressed, either in its brief or oral argument, its contention that the court below decided the case contrary to the weight of the evidence.

It is unnecessary for us to discuss the factual record which was clearly epitomized in the decision below. It suffices to state insofar as this record is concerned, that appellee proved by a clear preponderance of the evidence that the imported articles by reason of their relative dimensions (length more than three times width) and their use, are definitely, uniformly and generally known to the cotton rag hit-and-miss floor covering trade to be "runners" as distinguished from the common meaning of the term "rag rugs" as used in the involved paragraph.

In the classification of imported articles, if Congress has made manifest, in enacting the statute, that the words thereof must be understood according to their common meaning, proof of commercial designation does not control. *I. Shalom & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067; *United States* v. *Stone & Downer Co. et al*, 16 Ct. Cust. Appls. 82, T. D. 42732; *Del Gaizo Distributing Corp., Mennella Bros. Inc.* v. *United States*, 24 C. C. P. A. (Customs) 64, T. D. 48376. The intent of the Congress is the law and in ascertaining such intent the courts are bound to have recourse first to the words of the law. When their meaning is clear and unambiguous there is no sound reason why that meaning should be rejected and a search made for some signification other than that which has been clearly expressed. *Akawo, Morimura & Co.* v. *United States*, 6 Ct. Cust. Appls. 379, T. D. 35921; *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335.

In our opinion the expression "commonly known as 'hit-and-miss'" refers solely to a method, kind or style of weaving. We cannot interpret the first clause of the paragraph as appellant in effect would have us do, to read, "Floor coverings commonly known as rag rugs wholly or in chief value of cotton of the 'hit-and-miss' type". Such an interpretation would do violence to the express meaning of the

words thereof that it is the style of weaving which is stated in the paragraph to be commonly known as "hit-and-miss" and nothing else.

We see nothing in the wording of the paragraph which would indicate that the Congress intended that the words "rag rugs" are not susceptible of proof of commercial designation. The paragraph is all inclusive of cotton floor coverings. There are other well-known cotton rag rugs, such as the braided variety, and there are also well known rag floor coverings "wholly or in chief value of cotton of the type commonly known as 'hit-and-miss' ", in the form of carpeting, carpets and mats.

The meaning of the paragraph appears to us to be clear and unambiguous. It manifestly was not intended to classify all cotton rag floor coverings, of the type commonly known as hit-and-miss, as rugs, for the reason that it provides for carpeting, carpets, mats and rugs, all of which, it is commonly known, may be of hit-and-miss manufacture, and also all other cotton floor coverings not *eo nomine* designated.

Since it is our holding that paragraph 921 is free from ambiguity, it is not necessary to discuss its legislative history. *United States* v. *H. J. Heinz Co.*, 26 C. C. P. A. (Customs) 9, T. D. 49557. However, since appellant has argued that an examination of said legislative history supports its contention that it was the intent of the Congress to protect the domestic manufacture of cotton rag floor coverings of the hit-and-miss type, by placing a duty upon all such floor coverings at 75 per centum ad valorem, we deem it proper to state that we have examined said history and find nothing therein which sustains that contention.

The *Stone & Downer* case, 274 U. S. 225, is distinguishable from the present case. In that case the main controversy centered about the meaning of the expression "Wool, commonly known as clothing wool, * * * ", appearing in paragraph 18 of the Emergency Tariff Act of May 27, 1921, c. 14, 42 Stat. 9, 10, under which the imported merchandise was classified. The importer contended that the words "commonly known as clothing wool" had a well-settled commercial meaning and that in the trade; "combing wool" (which was the kind of wool imported) was commercially known as being distinct from "clothing wool" and therefore not classifiable under said paragraph but was free of duty under paragraph 650 of the Free List of the Tariff Act of October 3, 1913.

In that case, the court in its opinion stated that "The exact question is whether paragraph 18 includes in the term clothing wool, long-staple or combing wool as well as short-staple or carding wool. They are both used in clothing." The court held that the imported merchandise had been properly classified by the collector. While the

court buttressed its reason for so holding by reference to legislative history, it stated as follows:

The natural and usual meaning of the words "clothing wool" is wool for clothing. That is what the non-expert reader of the words would understand until he was advised of a different meaning by reason of the language of the trade. When, therefore, the words are used *"commonly known as* clothing wools," the ordinary inference from the collocation of the words is that they refer to wool that is used in making clothing. If Congress had intended that the words "clothing wool" should have their commercial designation, it would simply have used the words without qualification or it would have said "commercially known as." It would not have used the phrase *"commonly known as."* The phrase indicates not only that clothing wool is used in its ordinary or non-expert meaning, but is to serve the same purpose as the same phrase in connection with carpet wools, in the same clause, by indicating that, while these wools were capable of use for other than clothing and carpets, respectively, they were to be classified by reference to their chief use. [Italics quoted.]

It is clear to us that the issue in the instant case differs from that of the said *Stone & Downer* case. There the question involved was whether or not proof of commercial designation excluded combing wool from the said paragraph of the emergency tariff act when the paragraph provided for the levying of duty on all "wool, commonly known as clothing wool." Here the issue is not whether the goods are of the "type commonly known as 'hit-and-miss' ", but whether such merchandise is a "rug" or a "runner." In neither the statute nor its legislative history do we find any indication that the Congress intended that the words "rag rugs" were to be considered as being restricted to their common meaning.

The same distinction is made as to the case of *United States* v. *Klumpp*, 169 U. S. 209.

The case of *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732, was cited by appellant merely as an authority on the question of congressional intent to confine the meaning of a designation to its common meaning. In view of what has been hereinbefore stated, it is not necessary to discuss that case.

We agree with the court below that the *Telfeyan & Co.* case, *supra*, is somewhat analogous to the present case and that the facts there closely parallel those here, although that case is not wholly applicable here. In that case the involved merchandise consisted of Anatolian mats, assessed with duty by the collector at the rate of 55 per centum ad valorem as oriental rugs under the first clause of paragraph 1116 of the Tariff Act of 1922. The protest claimed the goods, which were commonly known as oriental rugs, to be commercially designated by and known in the trade as mats when smaller in dimensions than 4½ feet by 2½ feet. The judgment of the Board of General Appraisers (now the United States Customs Court) sustaining the protest was affirmed by this court. In that case it was held that mats,

irrespective of material, are distinguished from rugs, which are larger. In this case the issue has been strictly confined to the meaning of the words "rug" and "runner" in the cotton hit-and-miss floor covering trade and excludes any meaning that "rugs" and "runners" may have in any other floor covering trade. Furthermore, it will be noted that there is a difference between that case and the instant case consisting of the fact that the word "mats" appeared in the Tariff Act of 1922, whereas the term "runner" or "runners" does not appear in any tariff act.

As far as this case is concerned, in our opinion the imported merchandise was properly held by the trial court to be included, under the doctrine of commercial designation, in the expression "all other floor coverings," and therefore the judgment of the United States Customs Court is *affirmed*.